**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Beth Caggiano, | No. CV-19-05522-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Lisa Beth Caggiano's Application for Disability Insurance benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 18, Pl. Br.), Defendant Social Security Administration Commissioner's Response Brief and Motion to Remand (Doc. 21, Def. Br.), and Plaintiff's Reply to Defendant's Answering Brief and Motion to Remand (Doc. 22, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 11, R.) and now reverses and remands the Administrative Law Judge's ("ALJ") decision.

**I.     BACKGROUND**

In April 2016, Plaintiff applied for disability insurance benefits, for a period of disability beginning on December 31, 2014, an amended onset date. (R. at 22, 40, 157–63.) The Commissioner denied her application initially and on reconsideration. (*Id.* at 57–68, 70–83.) Plaintiff appeared before the ALJ for a hearing regarding her claim on May 23, 2018. (*Id.* at 36–54.) In a decision dated September 26, 2018, the ALJ found that Plaintiff

was not disabled. (*Id.* at 19–30.) The Appeals Council subsequently denied review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1–6.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Plaintiff. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: migraines; neurogenic pain; and central pain syndrome. (R. at 24.) The ALJ found that Plaintiff does not have an impairment that meets or medically equals the severity of one of the listed impairments set out at 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.* at 25.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C.F.R. § 404.1567(b) except with the following additional limitations: [Plaintiff] is limited to areas with moderate noise. She should avoid hazards such as moving machinery and unprotected heights. [Plaintiff] can occasionally climb ramps and stairs; but, no ladders, ropes and scaffolds. [Plaintiff] can frequently climb, balance, stoop, kneel, crouch and crawl. Due to pain, [she] is limited to simple work, which is defined as work with a reasoning level of 3 or below.

(*Id.* at 25.) Based on Plaintiff's RFC, the ALJ determined that Plaintiff was able to perform past relevant work as a waitress. (*Id.* at 28.) Accordingly, the ALJ found that Plaintiff was not disabled during the relevant period. (*Id.* at 30.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting

evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III.    DISCUSSION

Plaintiff raises two arguments. First, Plaintiff argues the ALJ erred by rejecting her symptom testimony. (Pl. Br. at 15.) Second, Plaintiff argues the ALJ incorrectly evaluated the medical opinion of Scot Fechtel, M.D. (*Id.* at 25.) Plaintiff contends that, considering these errors, the Court should apply the "credit-as-true" rule and remand for an award of benefits. (*Id.* at 25, 27–28.) Plaintiff further requests that the Court amend her disability onset date from December 31, 2014 to January 16, 2014. (*Id.* at 2–3.) Defendant concedes

that the ALJ incorrectly evaluated Dr. Fechtel's medical opinion but requests the Court remand for further administrative proceedings. (Def. Br. at 7.) For the following reasons, the Court reverses and remands for a new disability determination.

### A.     Plaintiff's Symptom Testimony

Plaintiff contends the ALJ erred by rejecting her symptom testimony. (Pl. Br. at 15.) The ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). If the claimant satisfies step one, and there is no evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). This standard is the most demanding in Social Security cases. *Garrison*, 759 F.3d at 1014–15.

Here, the ALJ considered Plaintiff's testimony that "she is unable to work because of her migraine headaches," "she has migraines 2–3 times a week, lasting for approximately 2 days each time," "her symptoms include[] extreme sensitivity to light and sound," and "for the last few years, she has not responded to medications" or other therapy. (R. at 26.) The ALJ further considered Plaintiff's statements that she "is now dizzy, exhausted and has muscle spasms," her daily activities include "taking care of her cats . . . and laying on the couch watching television," and her husband does "all the chores and shopping." (*Id.*) The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. (R. at 26.) Plaintiff, therefore, satisfied the first step of the analysis. At step two, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not consistent with the medical evidence and other evidence in the record." (*Id.*) To support this finding, the ALJ noted: (1) diagnostic imaging did not support the severity of

Plaintiff's allegations and a physical examination in December 2014 "revealed relatively normal findings;" (2) the "objective findings ha[d] not changed" despite Plaintiff's complaints of increased pain; (3) Plaintiff took a five-day trip to Ohio; (4) Plaintiff made "inconsistent statements" throughout the disability process; and (5) Plaintiff's course of treatment was "conservative" and "not consistent." (R. at 26–27.)

First, the ALJ's assertion that "diagnostic tests and studies do not support the claimant's allegations" is premised on a September 2015 medical record, which provides that a "[n]eedle EMG of selected muscles of the left lower extremity did not reveal any evidence of radiculopathy, myopathy, myotonia, or denervation." (R. at 26, 524.) The ALJ further relied on a physical exam from December 2014, which "revealed relatively normal findings."[1] (R. at 27.) The ALJ explained that those records were "[c]ontrary to [Plaintiff's] testimony of significant pain." (*Id.* at 26.) Plaintiff argues that the ALJ erred by failing to specify the inconsistency between the medical evidence and Plaintiff's reported symptoms. (Pl. Br. at 16–17.) Under Ninth Circuit law, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). Here, the ALJ merely quoted isolated medical records and made no effort to explain how that evidence undermined Plaintiff's statements.

Second, the ALJ discredited Plaintiff's subjective testimony because the "objective findings ha[d] not changed" despite her complaints of increased pain. (R. at 27.) The ALJ did not cite to any portion of the record to support this assertion. Plaintiff argues the ALJ "demanded evidence that is not required when attempting to discount the severity of [her] symptoms." (Pl. Br. at 18.) Under Ninth Circuit law, "general findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. And because "migraine headaches cannot be detected by imaging techniques, laboratory tests, or physical examination," the fact the objective findings had not changed does not

---

[1] The Court notes that, as support, the ALJ cited to a state agency's disability determination explanation, rather than the medical record pertaining to the December 2014 examination. (*Compare* R. at 27, 63, *with* R. at 473.)

necessarily undermine Plaintiff's credibility. *Nelson v. Comm'r of Soc. Sec. Admin.*, 2020 WL 859190, *5 (D. Ariz. Feb. 21, 2020) (internal quotations and alterations omitted).

Third, the ALJ found inconsistencies in Plaintiff's symptom testimony because she said "she was in extreme pain with a lack of concentration and focus in 2014" yet "she also went to visit her grandmother in Ohio, for five days, and the trip went well." (R. at 27.) As Plaintiff correctly notes, the Ninth Circuit has repeatedly rejected reliance on a claimant's ability to travel as a legitimate basis to reject symptom testimony. *See e.g.*, *Reddick v. Chater*, 157 F.3d 715, 721–22 (9th Cir. 1998) (concluding the ALJ provided unsatisfactory reasons for discounting a plaintiff's credibility, including the plaintiff's ability to take weekend trips); *Howard v. Heckler*, 782 F.2d 1484, 1488 (9th Cir. 1986) ("[T]o find [a plaintiff's] claim of disability gainsaid by [her] capacity to engage in periodic restricted travel . . . trivializes the importance that we consistently have ascribed to pain testimony."). The Ninth Circuit has further "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. And the Court will not do so here.

Fourth, the ALJ found that Plaintiff made inconsistent statements throughout the disability process. (R. at 27.) Specifically, the ALJ noted that Plaintiff "testified she stopped leaving the house after she got sick" but then "attended family functions such as Thanksgiving with extended family." (*Id.* at 27.) A claimant, however, need not "vegetate in a dark room excluded from all forms of human and social activity" to qualify for disability benefits. *Cooper v. Brown*, 815 F.2d 557, 561 (9th Cir. 1987). And a careful examination of the record reveals that Plaintiff testified as follows:

> I stopped leaving the house very shortly after I got sick in the very beginning. There were . . . some instances I left the house, Thanksgiving, my husband had extended family and his mom had gotten cancer again and so I tried to attend some of those family functions but then I stopped because we would always have to leave early because I wasn't feeling well and I couldn't keep up.

(R. at 47.) The ALJ's literalist interpretation that Plaintiff never left the house is therefore

undermined by her testimony that there were "some instances" when she left home.

The ALJ further explained that Plaintiff said "her husband did all the chores and shopping," yet the record indicated things were "stable" when her husband went on vacation, which "suggests [Plaintiff] was caring for herself." (R. at 27.) But the ALJ's conclusion ignores critical portions of Plaintiff's testimony. When her husband went on vacation, Plaintiff explained that her "neighbors and friends . . . checked in on [her]" and "would pick up any supplies [she] needed for [her] cats." (R. at 50.) Plaintiff further explained that she "basically just [ate] things like apples and carrots" because she didn't have the "energy or strength and [was] too shaky to stand or chop food." (*Id.*) Thus, contrary to the ALJ's conclusion, the record does not suggest that Plaintiff cared for herself while her husband traveled.

The ALJ also noted that, during the administrative hearing, Plaintiff "was very precise . . . about the dates of her treatments and answered all questions in great detail." (R. at 27.) But the ALJ made no effort to explain how those observations undermined Plaintiff's credibility or testimony. *See Holohan*, 246 F.3d at 1208.

In addition, the ALJ also emphasized that Plaintiff remained active by hiking regularly and walking on the treadmill. (R. at 27.) The ALJ, again, made no effort to explain the inconsistency between Plaintiff's testimony and her exercise. *See Holohan*, 246 F.3d at 1208. Moreover, the Ninth Circuit has "warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain . . . ." *Garrison*, 759 F.3d at 1016. When "a claimant is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ failed to make specific findings relating Plaintiff exercising to a work setting.

Last, the ALJ rejected Plaintiff's symptom testimony because her course of treatment "was inconsistent" and "conservative." (R. at 27.) The ALJ did not cite to any portion of the record to support that assertion. An examination of the record reveals that

Plaintiff's treatment included 12 electroconvulsive therapy sessions, multiple nerve blocks, narcotic pain medication, intravenous infusions, and trigger point injections. (R. at 479–80, 485, 491–95, 501–02.) The Ninth Circuit requires that "[a]ny evaluation of the aggressiveness of a treatment regimen [] take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). The ALJ made no effort to identify the treatment deemed inconsistent or conservative, let alone explain why she found that treatment to be conservative for migraines, neurogenic pain, or central pain syndrome.

Accordingly, the Court finds the ALJ provided unsatisfactory reasons for discounting Plaintiff's credibility. Because the ALJ's credibility finding is not supported by specific, clear and convincing reasons supported by substantial evidence, the Court concludes the ALJ's credibility determination was erroneous.

### B. Dr. Fechtel's Medical Opinion

Plaintiff argues the ALJ erred by rejecting Dr. Fechtel's opinion evidence. (Pl. Br. at 25–28.) Defendant concedes that remand on this basis is appropriate. (Def. Br. at 7.) An ALJ must consider all medical opinions when assessing a claimant's RFC. "[S]pecial weight" is generally accorded to opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). But, if a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight.

Here, the ALJ gave "no weight" to the medical opinion of Dr. Fechtel, Plaintiff's treating physician. (R. at 27.) As support, the ALJ explained that "the medical source statements are dated after the date last insured of December 31, 2014," and the records "did not substantiate the existence of a disabling impairment on or prior to the date last insured." (R. at 27.) Contrary to the ALJ's reasoning, the Ninth Circuit has "specifically held that 'medical evaluations made after the expiration of claimant's insured status are relevant to

an evaluation of the preexpiration condition.'" *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988)). The Court therefore finds the ALJ failed to provide "specific and legitimate reasons supported by substantial evidence in the record" when affording Dr. Fechtel's medical opinion no weight. *Reddick*, 157 F.3d at 725.

### C. Scope of Remand

The Court will now address the scope of the remand. Plaintiff seeks a remand for an award of benefits. (Reply at 4, 8.) Defendant argues that the Court should remand the instant case for further administrative proceedings to enable the Commissioner to reevaluate the evidence of record. (Def. Br. at 7.)

When a claimant moves to remand for an award of benefits, as Plaintiff does here, the claimant must meet the "credit-as-true" rule. The credit-as-true rule applies "only in rare circumstances." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (internal citations omitted). It applies when three elements are present. *Id.* at 1099–1102. First, the ALJ must have failed to provide legally sufficient reasons for rejecting medical opinion evidence or claimant testimony. *Id.* at 1100. Second, the record must be fully developed, there must be no outstanding issues that must be resolved before a determination of disability can be made, and the Court must find that further administrative proceedings would not be useful. *Id.* at 1101. Third, if the above elements are met, the Court may "find[] the relevant testimony credible as a matter of law . . . and then determine whether the record, taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.* (citations omitted).

Here, the Court found that the ALJ improperly discredited Plaintiff's testimony, and Defendant concedes that the ALJ failed to provide legally sufficient reasons for rejecting Dr. Fechtel's medical opinion; the first step of the credit-as-true rule is thereby satisfied. The second and third steps of the credit-as-true rule, however, are not met. The Court finds that additional proceedings would be useful to determine whether Plaintiff is disabled. And, even if Plaintiff's testimony is taken as credible, the Court further finds that "slight[]

uncertainty" remains as to the outcome of the disability determination. *See Treichler*, 775 F.3d at 1101. The ALJ considered the reviewing medical consultants' opinions at the initial and reconsideration level, which "reported [Plaintiff] is capable of working at a medium level of exertion," and afforded those opinions "partial weight." (R. at 27–28.) Additional proceedings are necessary for the ALJ to reconcile the reviewing medical consultants' opinions with Plaintiff's subjective testimony and Dr. Fechtel's medical opinion. *See Treichler*, 775 F.3d at 1098 ("[W]e leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."). Considering these circumstances, the Court will remand this matter to the ALJ for a new disability determination.

### D. Onset of Disability

The only remaining issue is the alleged onset date of Plaintiff's disability. Plaintiff seeks to amend her disability onset date from December 31, 2014 to January 16, 2014. (Pl. Br. at 3.) At the administrative hearing, the ALJ accepted Plaintiff's request to amend the onset date from February 1, 2008 to December 31, 2014. (Pl. Br. at 3; R. at 22.) Plaintiff's current request is premised on the ALJ's consideration of medical records dating back to January 2014. (R. at 27, 351–52.) Plaintiff argues that, because the ALJ reviewed those records, the ALJ effectively considered Plaintiff's disability since January 16, 2014. (Pl. Br. at 2.) Plaintiff, however, does not provide the Court with any authority establishing that this Court may amend her disability onset date when the Court remands an ALJ decision for further administrative proceedings.

Defendant responds to Plaintiff's argument in one footnote, noting that the caselaw Plaintiff cited involves amending onset disability dates to subsequent dates, not antecedent dates as Plaintiff seeks to do here. (Def. Br. at 2 n.1.) Defendant did not address Plaintiff's argument pertaining to the ALJ's consideration of medical evidence that predates December 31, 2014. Thus, the Court notes that Defendant has not adequately responded to Plaintiff's argument. *See* LRCiv 16.1(b) ("Defendant's brief must . . . respond specifically to *each* issue raised by Plaintiff . . . .") (emphasis added).

That said, Social Security Ruling ("SSR") 83-20 provides guidance regarding the onset date of disability.[2] "In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20, 1983 WL 31249, *1 (Jan. 1, 1983). The Ruling further provides that "the date alleged by the individual should be used if it is consistent with all the evidence available." *Id.* at *3. The Court notes that the proposed January 16, 2014 onset date is consistent with the medical evidence in this case. But, because this Court is remanding this matter for further proceedings and thereby is not the ultimate decisionmaker as to whether Plaintiff qualifies for an award of benefits, the Court declines to evaluate Plaintiff's request to amend the alleged onset date. *See Shultes v. Colvin*, 2014 WL 4723883, *4 (W.D. Wash. Sept. 23, 2014). On remand, the ALJ may address Plaintiff's request. *See Demello v. Colvin*, 2013 WL 5274815, *2 (W.D. Wash. Sept. 18, 2013).

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendant's Motion to Remand (Doc. 21).

**IT IS FURTHER ORDERED** remanding this matter to the Social Security Administration for further consideration consistent with this Order.

**IT IS FINALLY ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 19th day of November, 2020.

Michael T. Liburdi
United States District Judge

---

[2] According to governing regulations, SSRs "'are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy and interpretations' of the [Social Security Administration]." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009) (quoting 20 C.F.R. § 402.35(b)(1)). Although "SSRs do not carry the 'force of law,'" if they are consistent with the Social Security Act and regulations, SSRs are entitled to "some deference." *Id.*